The document below is hereby signed.

Signed: January 15, 2013



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GARY STANCIL, | ) | Case No. 11-00747 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GARY STANCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10006 |
| BRADLEY INVESTMENTS, LLC,, | ) | |
| _et al._, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter.** |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER RE
LIEN HOLDER DEFENDANTS' MOTION TO DISMISS

The debtor has filed a Complaint to Compel Turnover of Real Property as Result of Willful Violation of the Automatic Stay, Breach of Fiduciary Duty and Sanctions. The complaint alleges that a foreclosure sale of the debtor's real property, which was conducted while the debtor's prior bankruptcy case was pending, violated the automatic stay of Section 362(a) of the Bankruptcy Code (11 U.S.C.). One group of defendants, referred to herein as

the Lien Holders, has filed a motion to dismiss the claims against them, claims for monetary sanctions under 11 U.S.C. § 362(k) for willful violation of the automatic stay.[1]  The court will grant the motion.[2]

I

Gary Stancil and his mother jointly own the real property that was sold at a foreclosure sale auction.  The complaint alleges that Bradley Investments, LLC, Ross Dembling, Lawrence Posner, Corinna Posner, Joseph Zytnick, and Hannah Davis Zytnick are the holders of a Deed of Trust on that property.[3]  The complaint refers to this group of defendants as the Lien Holders and alleges that they retained Greg S. Friedman to act as trustee for their deed of trust.  Compl. ¶ 17.

---

[1]  The Lien Holders are named only in Count I of the complaint, under which the debtor seeks sanctions for willful violation of the stay.  The Lien Holders are not named in Count II, which seeks turnover of the real property, or in Count III, which alleges a breach of fiduciary duty by other defendants.

[2]  Although it did not join in the motion to dismiss, Bradley Investments LLC was named as a Lien Holder in Count I, and the the arguments raised in support of the motion appear also to apply to that entity.  For ease of discussion, this decision's analysis will include that entity as one of the Lien Holders (with the plaintiff to be ordered to show cause why the complaint ought not be dismissed as to that entity as well).

[3]  The Lien Holders' motion to dismiss explains that the defendants were not actually lien holders and were, instead, "investors in a loan held by co-defendant Greg Friedman and secured by a deed of trust held by Friedman. . . . [w]ho was acting as trustee for the Investor Defendants."  For ease of reference, the court will nevertheless refer to this group of defendants as the Lien Holders.

2

Exhibits to the complaint, however, demonstrate that the Lien Holders are only indirectly the beneficiaries of the Deed of Trust.  Specifically, they are beneficiaries of a trust holding a promissory note, a trust of which Greg S. Friedman is the trustee.  In turn, Greg S. Friedman, as holder of the note, is the beneficiary of the deed of trust.  Attached as an exhibit to the complaint is a copy of a Trustee's Deed dated September 29, 2011, executed by Susan H. Friedman, as trustee, and effecting conveyance of the property pursuant to the foreclosure sale.  That Trustee's Deed recites that the deed of trust at issue in this proceeding was executed by the Stancils conveying the property "to Morton J. Frome and Susan H. Friedman, Trustees for GREG S. FRIEDMAN, Trustee for the parties named on Schedule 'A' to the Promissory Note ('Beneficiary')" in trust to secure payment of the debt.  The Trustee's Deed further states that Morton J. Frome died in 2009, and that Susan Friedman sold the property at the foreclosure sale.

Although the complaint does not attach the underlying Deed of Trust and the related promissory note and its Schedule "A", an Affidavit of Occupancy relating to National REO Auctions' Notice of Foreclosure, signed by Greg Friedman and attached as an exhibit to the complaint, states as follows:

I, Greg S. Friedman, hereby depose and state as follows:

> 1.  I am Trustee for the Noteholders known as Bradley Investments, LLC, Ross Dembling, Lawrence Posner,

3

>  Corinna Posner, Joseph Zytnick, and P. Hannah Davis Zytnick.
>
>  2. The aforesaid entity and individuals are jointly holders of a note secured by a deed of trust from Rufus Stancil, Jr. And Delores Stancil . . . ."

The complaint alleges that the Lien Holders scheduled a foreclosure sale for the Property on June 17, 2011,[4] Compl. ¶ 18, and that the debtor and his mother, Delores Stancil, then filed a joint bankruptcy case in order to halt the foreclosure sale. The complaint further alleges that Harry T. Spikes, the Stancils' former bankruptcy attorney, notified National REO Auctions, Inc. of the bankruptcy filing prior to the sale, and upon being notified of the pending case, National REO Auctions halted the sale. The sale went forward several hours later, however, and the property was sold to 12th Street, LLC while the debtor's prior bankruptcy case was still pending. The complaint alleges

---

[4] The Lien Holders argue that the complaint fails to allege that the Lien Holders took any action in violation of the automatic stay. The court disagrees. By alleging that the Lien Holders scheduled a foreclosure sale, which sale ultimately occurred while the debtor's prior bankruptcy case was pending, the debtor has alleged conduct that, at least plausibly, supports a claim for violation of the automatic stay. Although the exhibits attached to the complaint indicate that Greg Friedman was the beneficiary of the Deed of Trust, those exhibits also reflect that the Lien Holders were beneficiaries of the trust holding the promissory note that was secured by the Deed of Trust, and not strangers to the Deed of Trust. At this stage in the proceeding the court will accept as true the allegation that the Lien Holders scheduled the foreclosure sale, and will treat this alleged conduct as conduct having plausibly violated the automatic stay.

4

that the Lien Holders were notified of and thus had actual knowledge of the bankruptcy filing before proceeding with the foreclosure sale.  Compl. ¶ 38.  The complaint does not include any allegations purporting to specify when, how, or by whom the Lien Holders were notified of the bankruptcy case.

                              II

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the well-pled facts of the complaint, and the court should "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged . . . ." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). A complaint will survive a motion to dismiss if it contains sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The debtor's complaint asks the court to impose monetary sanctions against the Lien Holders for an alleged willful violation of the automatic stay.  Section 362(k) of 11 U.S.C. provides that "an individual injured by any willful violation of

                               5

a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  A violation of the stay is considered willful for purposes of § 362(k) "if a party knew of the automatic stay, and its actions in violation of the stay were intentional."  *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 191-92  (Bankr. C.D. Cal. 2011) (quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002)).[5] It follows that a stay violation is not willful, and relief under § 362(k) is not available, if the alleged stay violator was unaware of the stay at the time of the offending conduct.  *See In re Yost*, 2007 WL 184674, at *3 (Bankr. N.D. Ohio January 19, 2007) (finding that a party could not have committed a willful violation of the automatic stay during the time he was unaware of the bankruptcy filing); *In re Kline*, 420 B.R. 541, 548 (Bankr. D.N.M. 2009) (absent notice or knowledge of the bankruptcy case, any stay violation is "merely 'technical'" and no damages will be awarded).

　　The debtor's complaint alleges that prior to the foreclosure sale, Spikes called and notified National REO Acutions that a bankruptcy case was filed.  It then alleges that "[b]ecause the Lien Holders . . . were notified and thus had actual knowledge of

---

[5] I do not decide whether a violation is willful if the party knew the bankruptcy case was pending but was not on notice that the automatic stay would be violated by the act at issue.

the bankruptcy filing before proceeding with the foreclosure sale . . ." they willfully violated the automatic stay.  Compl. ¶ 38.  The complaint fails, however, to provide any basic facts to give meaning to this allegation, such as when, how, or by whom that knowledge was imparted.  The debtor cannot rely on such a conclusory allegation to satisfy the knowledge element of his claims against the Lien Holders.  Aside from the allegation that Spikes notified National REO Auctions that a bankruptcy case was filed, the complaint includes no other allegation of acts to give notice of the bankruptcy filing.

    The debtor contends that even if the Lien Holders did not have actual knowledge of the stay, Greg Friedman, as their trustee, was acting as the Lien Holders' agent, and his knowledge of the bankruptcy case is thus imputed to the Lien Holders.[6]

---

[6] For ease of analysis, I assume that Greg Friedman was on notice of the bankruptcy case, but that fact is not established by the conclusory allegations of notice contained in the complaint.  The complaint does not allege an act by which Greg Friedman was notified of the bankruptcy filing.  The auctioneer (who *did* receive notice) may have been the agent of Susan Friedman (the trustee under the deed of trust authorized to pursue a foreclosure sale to collect the secured debt), but that does not make the auctioneer the agent of Greg Friedman (or of the Lien Holders).  If Susan Friedman was imputed the notice given to the auctioneer as her agent, her knowledge is not necessarily imputed to Greg Friedman.  The complaint fails to allege any provisions of the deed of trust that made Susan Friedman not only a trustee, but also an agent subject to Greg Friedman's control.  As in the case of the issue of whether Greg Friedman was the Lien Holders' agent, the complaint fails to allege facts establishing that Susan Friedman was Greg Friedman's agent.

Even if Greg Friedman was notified of the bankruptcy filing, nothing in the complaint establishes that he was the Lien Holders' agent such that his knowledge can be imputed to the Lien Holders.

The knowledge element of a § 362(k) claim for willful violation of the automatic stay can be based on an agent's knowledge, imputed to his principal by virtue of the agency relationship.  *See Theokary v. Abbatiello (In re Theokary)*, 444 B.R. 306, 323-24 (Bankr. E.D. Pa. 2011) (choosing to follow decisions that "apply general principles of agency law and hold that a creditor-principal is liable under § 362(k) for the acts of an agent who willfully violates the automatic stay taken when those acts are within the scope of their principal-agent relationship."); *In re Taylor*, 430 B.R. 305, 314 (Bankr. N.D. Ga. 2010) ("[K]nowledge acquired by an agent acting within the scope of its agency is imputed to the principal for purposes of determining whether the principal willfully violated the automatic stay . . . .").  *But see In re Risner*, 317 B.R. 830, 836 n.9 (Bankr. D. Idaho 2004) (acknowledging split of authority on question of whether a principal ought to be liable for its agent's collection efforts by virtue of their agency relationship) (citing to *In re McCain*, Case No. 03-04624, (Bankr. D. Idaho Aug. 19, 2004), which, in turn, compared *In re Withrow*, 93 B.R. 436, 438 (Bankr. W.D.N.C. 1988), with *In re Atlas Mach. &*

8

*Iron Works, Inc.*, 239 B.R. 322, 333-35 (Bankr. E.D. Va. 1998)).

"Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) of Agency § 1.01 (2006).  "While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order for his complaint to survive a Rule 12(b)(6) motion to dismiss." *Cumis Ins. Soc'y v. Peters*, 983 F. Supp. 787, 796 (N.D. Ill. 1997).  *See also Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 2012 WL 4054141, at *12 n.5  (Sept. 17, 2012 D.D.C.); *Acosta Orellana v. CropLife Int'l,* 711 F. Supp.2d 81, 111 n. 36 (D.D.C. 2010) (entirely appropriate to examine whether elements of agency liability have been pled when addressing a 12(b)(6) motion to dismiss); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999).

The complaint alleges that Friedman was the Lien Holders' trustee, and although a trustee may, in some instances, act as an agent for his beneficiaries, a trustee relationship is legally distinguishable from an agency relationship.  Whether a trustee is additionally the agent of the beneficiaries of the trust depends on the circumstances of the parties' relationship and

9

involves a separate legal inquiry.  Restatement (Third) of Agency § 1.01 cmt. g (2006).  As the Comments to the Restatement make clear, "a trustee is not an agent of the settlor or beneficiaries unless the terms of the trust subject the trustee to the control of either the settlor or the beneficiaries."  *Id.* (text following Illustration 17).

As observed in *Evans v. Chase Manhattan Mortg. Corp.*, 2007 WL 902306 (March 23, 2007 D.D.C.):

> Of course, a trustee may or may not be an agent, and an agent may or may not be a trustee.  "One who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency." Restatement (Second) of Agency § 14B (1957).  The question whether a trustee is also an agent of the beneficiary depends on whether the trustee is subject to the control of the beneficiary as to the manner of performance.  *See id.* § 14B cmt. f ("If it is agreed that the [beneficiary] is to have general supervision and can, if he chooses, direct what is, or is not, to be done, an agency is indicated."). Whether such agreement existed "depends upon the construction of the words used in the light of all the circumstances," *id.* § 14B cmt. c, and upon "the amount of control agreed to be exercised by the [beneficiary], or, in doubtful situations, upon the amount of control in fact exercised," *id.* § 14B cmt. f.

*Id.* at *5.

The complaint fails to allege that the Lien Holders had the power to control Friedman's conduct, and as such, the complaint fails plausibly to suggest that an agency relationship existed between the Lien Holders and Friedman.  *See Gaubatz*, 2012 WL 4054141, at *13 ("allegations . . . do not plausibly suggest that an agency relationship existed between [the co-defendants].  Most

notably, these allegations do not suggest that [the one defendant] had the right to control and direct [his co-defendant] in the performance of his work and the manner in which the work [was] to be done"- the *sine qua non* of an agency relationship." (quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)).

The debtor cannot maintain an action for willful violation of the automatic stay against the Lien Holders based solely on the facts as alleged, and the court will grant the motion to dismiss accordingly.

III

It is

ORDERED that the motion to dismiss (Dkt. No. 65) is GRANTED. It is further

ORDERED that the claims against Ross Dembling, Lawrence Posner, Corinna Posner, Joseph Zytnick, and Hannah Davis Zytnick for willful violation of the automatic stay are DISMISSED. It is further

ORDERED that within 14 days after entry of this order, the plaintiff shall show cause, by a writing filed with the court, why the claim for willful violation of the automatic stay asserted against Bradley Investments LLC ought not be dismissed on the same grounds as those upon which the claims against the other Lien Holders have been dismissed. It is further

ORDERED that the plaintiff is granted leave within 21 days

after entry of this order to file an amended complaint against the Lien Holders.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.