The document below is hereby signed.

Signed: February 23, 2013



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GARY STANCIL, | ) | Case No. 11-00747 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| GARY STANCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10006 |
| BRADLEY INVESTMENTS, LLC, *et* | ) | |
| *al.*, | ) | |
| | ) | **For Publication in West's** |
| Defendants. | ) | **Bankruptcy Reporter.** |

MEMORANDUM DECISION AND ORDER RE
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

The court has before it the cross-motions for summary
judgment filed by 12th Street Real Estate, LLC ("12th Street")
and Gary Stancil.  12th Street is the purchaser at a foreclosure
sale-incident to a mortgage, in the form of a deed of trust,
securing payment of a promissory note-of property located at 12th
Street, N.E., Washington, D.C. (the "Property"), which Gary
Stancil and his mother, Delores Stancil, owned.

Gary Stancil has moved for summary judgment on Count I and Count II of his complaint.  In Count I he seeks monetary sanctions against:

- Greg S. Friedman who, as a trustee for certain defendants the complaint labeled the "Lien Holders," holds the promissory note secured by the deed of trust;

- the Lien Holders;

- the trustees under the deed of trust; and

- the auctioneer at the foreclosure sale.

In Count II he seeks an order compelling 12th Street to turn over the Property.  12th Street has moved for summary judgment on Count I of its counterclaim, in which it seeks an annulment of the automatic stay to rehabilitate its purchase of the Property at the foreclosure sale.

I

The following facts are not in dispute.  On September 1, 2005, Rufus and Delores Stancil, and their son, Gary Stancil, borrowed $280,000 from Greg S. Friedman as trustee for a group of investors (the "Lien Holders"), pursuant to a promissory note.[1] Defendant's Ex. 15.  The promissory note was secured by a deed of trust.  Defendant's Ex. 16.  Greg Friedman retained Susan Friedman and Martin Frome to serve as trustees under the deed of

---

[1]  The Lien Holders are Bradley Investments LLC, Ross Dembling, Lawrence and Corinna Posner, JTROS, Joseph Zytnick and P. Hannah Davis Zytnick, JTROS.

trust.[2]  *Id.*; Plaintiff's St. ¶ 2.  The Stancils pledged two
properties as collateral in the deed of trust, one of which is
the Property (the 12th Street, N.E. property) at issue in this
proceeding.  Defendant's St. ¶ 19.  The record owners of the
Property were Gary and his mother, Delores.  Plaintiff's St. ¶ 1.

After the Stancils defaulted under the note, the trustees
scheduled a foreclosure sale for June 17, 2011 at 10:45 a.m.
Defendant's St. ¶ 20 & Ex. 17.  On June 17, 2011, at 9:29 a.m.,
Gary Stancil and Delores Stancil filed a joint petition under
Chapter 13 of the Bankruptcy Code (11 U.S.C.).  *See* Case No.
11-00465.  Shortly before the scheduled foreclosure sale, Gary
and Delores' attorney at that time, Harry T. Spikes, called and
notified the auctioneer, National REO Auctions, Inc., of the
filing of the bankruptcy petition.  Defendant's St. ¶ 21.  At
some point later that day, the foreclosure sale occurred and 12th
Street purchased the property.  Defendant's St. ¶ 23.  Also at
some point later that day, the court dismissed the bankruptcy
case as to Delores Stancil (Case No. 11-00465, Dkt. No. 2),
because she was ineligible to file a bankruptcy petition at that
time pursuant to an earlier order of this court in a different
bankruptcy case (Case No. 11-00097, Dkt. No. 14), and also

---

[2]  The plaintiff's statement of undisputed facts states that
Frome has since passed away, and the foreclosure sale's trustee's
deed, executed by only Susan Friedman, recites that Frome died in
October 2009, long before the foreclosure sale.  The plaintiff
implicitly concedes that no relief is appropriate as to Frome.

because a mother and a son may not file a joint petition. Gary Stancil had not obtained prepetition credit counseling before filing the petition, and the court directed him to show cause why his case ought not be dismissed. In response, Gary Stancil submitted an affidavit in which he stated:

> 6. Prior to executing the Bankruptcy Petition, Attorney Spikes explained to me and my mother the purpose of Schedule-D, in fact he read the entire document to me and my mother. He explained that we had not sought Credit Counseling prior to filing the petition.
>
> 7. He further explained that the Petition would most likely be dismiss [sic] because of our failure to first seek credit counseling within 18 months next to filing the petition.

Affidavit of Gary Stancil, Case No. 11-00465, Dkt. No. 13 & Defendant's Ex. 10. Six days after the foreclosure sale, on June 23, 2011, the court dismissed Gary's case because he had not obtained the required prepetition credit counseling. *See* Case No. 11-00465, Dkt. No. 22.

At the time of the foreclosure sale, 12th Street admits to knowing the following:

> 12th Street knew that someone (whose identity is unknown to 12th Street) announced that a bankruptcy case had been filed by someone (whose identity was unknown to 12th Street on June 17, 2011), but that the bankruptcy case had also been dismissed on that same day. 12th Street had no knowledge as to who exactly filed, under which chapter of the bankruptcy code or the case number.

Defendant's St. ¶ 24 & Ex. 19 (Affidavit of Scott Evans).

4

Regarding their knowledge of the bankruptcy petition, Greg Friedman (the noteholder) and Susan Friedman (the trustee under the deed of trust) submitted the following in their Joint Response to the plaintiff's requests for admissions (the numbered statements are the requested admissions):

1. That on June 17, 2011, you were aware that Gary Stancil and Delores Stancil filed a bankruptcy, under Chapter 13 of the bankruptcy code, which initiated Case No. 11-00465 in the District of Columbia.

   A.    Neither of us had first hand knowledge; however, Harry Spikes said that a petition had been filed.  We were aware that any such petition, if there actually was one, was invalid as Delores Stancil was statutorily barred from filing such a petition.  We also were advised by our counsel that Federal bankruptcy law does not permit a parent and child to file a joint petition.  This was confirmed when the Clerk of the Bankruptcy Court dismissed the petition.

2. At the time of the actual foreclosure sale, you had actual knowledge of the bankruptcy filing by Gary Stancil & Delores Stancil.

   A. See Response No. 1 above.

3. Admit that even after learning of Delores Stancil and Gary Stancil's bankruptcy, you still allowed the foreclosure sale of the Property to proceed.

   A.  Admitted that we proceeded on advice of counsel and the auctioneer, both of whom advised that the petition as described by Mr. Spikes was not valid under Federal bankruptcy law.

Plaintiff's Ex. 4.

5

The closing of the foreclosure sale occurred on September 29, 2011. Defendant's Ex. 18 (Trustee's Deed).

## II

Summary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A fact is "material" if it might affect the outcome of the suit under the substantive governing law. *Id.* To create an issue of material fact, the nonmoving party's factual assertion must be supported by the record. *See Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 92 (D.D.C. 2008) ("'factual assertions' that are unsupported by citations to accurate record evidence are insufficient to create issues of material fact."). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Arrington*, 473 F.3d at 333. "Furthermore, in ruling on

6

cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 158 (D.D.C. 2008), *aff'd*, 358 F. App'x 189 (D.C. Cir. 2009).

III

Pursuant to 11 U.S.C. § 302, only spouses are entitled to file a joint petition.  As this court explained in its *Memorandum Decision re Motion of 12th Street Real Estate, LLC to Dismiss*, when two entities that are not spouses file a single petition with each entity listed as a debtor, a bankruptcy case is commenced as to each such entity under 11 U.S.C. § 301, because each debtor evidenced an intention to commence a bankruptcy case by filing the improper joint petition.  *See Stancil v. Bradley Invs., LLC (In re Stancil)*, 473 B.R. 478, 481 (Bankr. D.D.C. 2012).  The remedy to address the improper joinder is to sever the cases.  *Id.*  "Even if the case is dismissed as to one of the debtors, nevertheless the automatic stay and other incidents of a bankruptcy case arose as to each debtor by reason of the filing of the case, and, for the remaining debtor, those incidents were continuously in place after the commencement of the case." *Id.* at 481-82.

Here, the automatic stay did not arise in Delores Stancil's case pursuant to 11 U.S.C. § 362(b)(21).[3]  Nevertheless, the automatic stay arose as to Gary Stancil when he filed the joint petition with his mother.  Accordingly, the automatic stay was in effect at the time of the foreclosure sale even though the bankruptcy case was commenced by the filing of an unauthorized joint petition by Gary Stancil and Delores Stancil.[4]

Under 11 U.S.C. § 362(a)(4), Gary Stancil's filing of the joint petition operated as a stay of "any act to create, perfect, or enforce any lien against property of the estate."  The mortgagee, however, enforced its lien through the foreclosure sale.  An act taken in violation of the automatic stay is void. *Soares v. Brocton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997); *see also Middle Tenn. News Co., Inc. v. Charnel*

_____

[3]  This section provides in part:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay--
    . . . .
    (21) under subsection (a), of any act to enforce any lien against or security interest in real property--
        (A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title . . ..

[4]  The parties disagree about whether the dismissal of the case as to Delores Stancil occurred before or after the foreclosure sale, but it does not matter.  The dismissal was only as to Delores Stancil's case.  Under either scenario, the automatic stay was still in effect as to Gary Stancil's case at the time of the foreclosure sale.

8

*of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001);
*Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571
(9th Cir. 1992); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d
1306, 1308 (11th Cir. 1982).  Accordingly, the mortgagee's act of
enforcing the lien on the Property is a void act.  It follows
that 12th Street's purchase of the Property is a void act as well
unless the automatic stay is annulled.

IV

12th Street seeks an annulment of the automatic stay to
retroactively validate its purchase of the Property at the
foreclosure sale on the grounds that Gary Stancil filed his
petition in bad faith.  In support, 12th Street states that Rufus
Stancil, Gary Stancil's father, urged Gary to file the bankruptcy
petition and that Rufus knew of the prepetition credit counseling
requirement because he had filed previous bankruptcy cases that
were dismissed for failure to meet that requirement.  As
additional proof of Gary's knowledge of the requirement, 12th
Street points to Gary's Affidavit in which he stated that his
attorney and the clerk's office informed him that the petition
may be dismissed for lack of prepetition credit counseling.  12th
Street alleges that the improper joint filing also shows bad
faith on the part of Gary Stancil.

9

A

"Bankruptcy courts have the power to annul an automatic stay

retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in

order to rehabilitate stay violations." *Bunch v. Hoffinger*

*Indus.*, Inc. (*In re Hoffinger Indus., Inc.*), 329 F.3d 948, 951-52

(8th Cir. 2003). "The power to annul the stay must, however, be

exercised sparingly." *Williams v. United Inv. Corp. (In re*

*Williams)*, 124 B.R. 311, 316 (Bankr. C.D. Cal. 1991). This court

has explained the factors that courts often weigh in determining

whether to annul the automatic stay:

> (1) if the creditor had actual or constructive knowledge
> of the bankruptcy filing and, therefore, of the stay, (2)
> if the debtor has acted in bad faith, (3) if there was
> equity in the property of the estate, (4) if the property
> was necessary for an effective reorganization, (5) if
> grounds for relief from the stay existed and a motion, if
> filed, would likely have been granted prior to the
> automatic stay violation, (6) if failure to grant
> retroactive relief would cause unnecessary expense to the
> creditor, and (7) if the creditor has detrimentally
> changed its position on the basis of the action taken.

*In re Anderson*, 341 B.R. 365, 369-70 (Bankr. D.D.C. 2006)

(quoting *In re Stockwell,* 262 B.R. 275, 281 (Bankr. D. Vt.

2001)).

While courts often look to a combination of several of these

factors to determine if annulment is warranted, paramount among

these factors is the creditor's knowledge of the debtor's

bankruptcy filing. Typically, courts will annul the stay only

10

where the creditor had no knowledge of the debtor's bankruptcy
case when it violated the automatic stay. *Nat'l Envtl. Waste
Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129
F.3d 1052, 1055 (9th Cir. 1997) ("Many courts have focused on two
factors in determining whether cause exists to grant relief from
the stay: (1) whether the creditor was aware of the bankruptcy
petition; and (2) whether the debtor engaged in unreasonable or
inequitable conduct, or prejudice would result to the
creditor."); *Mut. Benefit Life Ins. Co. v. Pinetree, LTD. (In re
Pinetree, Ltd.)*, 876 F.2d 34, 37 (5th Cir. 1989); *In re
Siciliano*, 167 B.R. 999, 1008-1009 (Bankr. E.D. Pa. 1994) ("Most
courts will only annul the stay . . . if such action was taken by
a creditor without its knowledge of the debtor's bankruptcy
filing.").

B

The motions for summary judgment fixate on what 12th Street,
the purchaser, knew or did not know at the time of the sale, but
what matters is what the creditor knew.  Susan Friedman, the
trustee under the deed of trust, and Greg Friedman, the
noteholder, sought to enforce the lien on the Property.
Accordingly, it is the extent of their knowledge as to the
bankruptcy case that is significant.  They admit that they knew
Gary Stancil and Delores Stancil had filed a bankruptcy petition

11

before the foreclosure sale took place.[5]  They say that they thought "that any such petition, if there actually was one, was invalid as Delores Stancil was statutorily barred from filing such a petition," and that they "were advised by our counsel that Federal bankruptcy law does not permit a parent and child to file a joint petition."  Defendant's Ex. 20.

The Friedmans took a gamble by relying on their informed guess as to how the court would treat the unauthorized joint petition rather than pursuing an emergency motion for relief from the automatic stay, and their guess was wrong.  Their beliefs as to what effect such a filing would have on the operation of the automatic stay does not change the fact they were fully aware of the pending bankruptcy case at the time of the foreclosure sale. Their knowledge of the bankruptcy filing precludes annulment of the automatic stay.

Because it is the creditor's knowledge of the bankruptcy case that matters when it comes to the issue of annulment, it does not change the outcome if 12th Street had no knowledge of

---

[5]  The Friedmans did not file a timely opposition to Stancil's motion for summary judgment.  At the hearing on the motions for summary judgment, Greg Friedman suggested that what he had meant to say in his response to the request for admissions was that Harry Spikes did not tell him about the bankruptcy filing until the day after the foreclosure sale.  However, his responses to the requests for admissions consistently assert that he knew about the joint filing by Gary and Delores Stancil *before* the foreclosure sale, and the Friedmans did not file anything to correct their responses.  The record is clear that the Friedmans had notice of the joint filing before the sale.

the bankruptcy case.  12th Street claims only to have known that some unknown person announced that a bankruptcy case had been filed by another unknown person and that the case had been dismissed.  *See* Defendant's St. ¶ 24.  Such a fuzzy description of what 12th Street knew does not protect the seller from the consequences of the sale having been held in violation of the automatic stay.  Even if 12th Street had no knowledge of the bankruptcy case commenced by Gary Stancil and Delores Stancil, there still would not be grounds for annulling the stay because the sellers, the Friedmans, clearly had notice of the bankruptcy case.  The court will not let an innocent purchaser insulate a seller who violates the automatic stay.  To allow the seller to dodge the automatic stay by selling to an innocent purchaser would cheapen the stay's protection.

It is true that the creditor's knowledge of the bankruptcy filing is not always fatal to a motion to annul the automatic stay, as is demonstrated by the case of *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984).  *See also Blue Ridge Bank v. Boswell (In re Boswell)*, 206 B.R. 421, 424 n.4 ("While ignorance of the stay is not a prerequisite to obtaining relief under § 362(d), . . . a creditor does act at its own peril when it proceeds in knowing violation of the stay.").  *In re Albany Partners*, however, is not controlling here because in that case the mortgagee was entitled

13

to rely on a previous state court adjudication that the property
at issue, a Ramada Inn, was not property of the estate.  *Id.* at
676 ("[The mortgagees] were entitled to rely upon the previous
judicial determination and to proceed with the foreclosure sale
on the assumption that the Ramada Inn was not part of the
bankruptcy estate.").  The Eleventh Circuit court also agreed
with the bankruptcy court's finding that Albany Partners, Ltd.
had not filed the bankruptcy petition in good faith.  *Id.* at 674.

In this case, there was no prior adjudication as to the
Stancils' interest in the property on which the Friedmans could
reasonably rely.  Instead, the Friedmans relied at their peril on
their assumption that the unauthorized joint petition would not
give rise to the automatic stay.

Moreover, even if Gary Stancil's filing was in bad faith,
the court will not sanction a willful violation of the automatic
stay by annulling the stay.  Any bad faith on Gary Stancil's part
is outweighed by the mortgagee's knowing violation of the
automatic stay.

At least one court has interpreted *In re Albany Partners* as
stating that the court may grant an annulment "only if the
Creditor justifiably believed its action did not violate the
automatic stay."  *IMC Mortg. Co. v. Brown (In re Brown)*, 251 B.R.
916, 919 (Bankr. M.D. Ga. 2000).  Although the Friedmans relied
on advice of counsel that bankruptcy law does not permit a parent

14

and child to file a joint petition, the Friedmans took a guess as
to what the effect of that improper joint petition would be
without inquiring further as to the status of the case and the
operation of the automatic stay.  They did not justifiably
believe the sale did not violate the automatic stay.

C

At the hearing on the motions for summary judgment, 12th
Street argued that the long delay between the foreclosure sale
and the commencement of this adversary proceeding is another
indication of Stancil's bad faith, or at least of inequitable
conduct on his behalf, and justifies annulment of the automatic
stay.  12th Street cites to *Williams v. Levi (In re Williams)*,
323 B.R. 691, 701 (B.A.P. 9th Cir. 2005), in which the Bankruptcy
Appellate Panel affirmed the bankruptcy court's annulment of the
automatic stay, even though the purchaser at the foreclosure sale
had notice of the bankruptcy filing, based on the debtor's
inequitable conduct which included the debtor's "unreasonable
delay in failing promptly to attack the sale."

In this case, 12th Street has not shown any unreasonable
delay.  The foreclosure sale occurred on June 17, 2011, the
closing occurred on September 29, 2011, Gary Stancil filed his
chapter 11 petition on October 6, 2011, and he filed this
adversary proceeding on February 14, 2012.  There is nothing in
the record as to what occurred between June 17, 2011 and

15

September 29, 2011.  In any event, Gary Stancil was entitled to assume that the auction sale having been void, the Friedmans would not proceed to a closing of the sale.

For these reasons, 12th Street's motion for summary judgment on Count I of its counterclaim, seeking an annulment of the automatic stay, will be denied.

V

Because the stay will not be annulled, the foreclosure sale is void.  Gary Stancil has moved for summary judgment on his claim for turnover of the Property under 11 U.S.C. § 542(a). 12th Street argues that summary judgment on the issue of turnover should not be granted because a genuine dispute of material fact exists as to whether the property is of inconsequential value or benefit to the estate.  Defendant's Opp. at 4.

The issue of inconsequential value is moot, because District of Columbia law provides Gary Stancil with the right to have the real property he owns turned over to his possession.  *See* D.C.

Code § 16-1501.[6]  The court is not limited to only applying the turnover provision of the Code if Stancil is entitled to relief under a different legal theory.  *See Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) ("Even when the plaintiff is represented by counsel, and counsel initially misconceived the proper legal theory of the claim, summary judgment does not follow if the plaintiff is entitled to relief on some other legal theory and requested as much.") (internal quotation marks and citation omitted); *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995) ("The pleadings need not identify any particular legal theory under which recovery is sought.").

The foreclosure sale was void.  Therefore, 12th Street does not own the Property, and Gary Stancil is entitled to the return of possession of the Property under District of Columbia law. There is no requirement that he show that the Property has consequential value or benefit.  It is up to him to decide whether it is worth pursuing possession of the Property.  The

---

[6]  That section reads:

When a person detains possession of real property without right, or after his right to possession has ceased, the Superior Court of the District of Columbia, on complaint under oath verified by the person aggrieved by the detention, or by his agent or attorney having knowledge of the facts, may issue a summons in English and Spanish to the party complained of to appear and show cause why judgment should not be given against him for the restitution of possession.

D.C. Code § 16-1501.

court will order the turnover of the Property and the net rents
from the Property.

VI

Gary Stancil has also moved for summary judgment on his
claim for monetary damages and sanctions against the Lien
Holders, Greg Friedman, Susan Friedman, and REO.  He does not
seek damages from the purchaser, 12th Street.

The claims against the Lien Holders have been dismissed
pursuant to this court's order, because the complaint does not
state any facts to support the allegation that the Lien Holders
had knowledge of the bankruptcy filing and nothing in the
complaint establishes that Greg Friedman was the Lien Holders'
agent.  *See* Dkt. No. 82; Lien Holders' Response at 2.
Accordingly, the original complaint has not stated a claim for
relief against the Lien Holders and his motion for summary
judgment as to those defendants will be denied.

Gary Stancil also seeks to impose monetary sanctions on REO,
the auctioneer at the foreclosure sale.  Stancil states that REO
is deemed to have admitted having notice of the bankruptcy
filing, because REO failed to respond to the Request for
Admissions.  However, Stancil did not attach a copy of the
Request for Admissions that was served on REO and therefore the
court cannot determine what is deemed to be admitted by REO.  As
a result, summary judgment as to REO will be denied.

The remaining defendants against whom Stancil seeks monetary damages and sanctions are Greg Friedman (the noteholder) and Susan Friedman (the trustee under the deed of trust).  As has already been discussed, the Friedmans knew of the bankruptcy filing and they violated the automatic stay that arose when Gary Stancil filed his bankruptcy petition by consummating the foreclosure sale.  Gary Stancil contends that this gives rise to liability for damages under 11 U.S.C. § 362(k)(1).

With an exception in 11 U.S.C. § 362(k)(2) of no applicability to this proceeding, § 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  Aside from the exception in § 362(k)(2), § 362(k) is identical to what was 11 U.S.C. § 362(h) prior to the amendment of the Bankruptcy Code in 2005.  A violation of the stay is generally considered willful for purposes of § 362(k) (or former § 362(h)) "if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181, 191-92 (Bankr. C.D. Cal. 2011) (quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002)).

Most courts liberally construe the term "willful" and do not require a specific intent to violate the automatic stay.  *See*

19

*Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (B.A.P. 9th
Cir. 2004) ("No specific intent is required; a good faith belief
that the stay is not being violated 'is not relevant to whether
the act was 'willful' or whether compensation must be awarded.'")
(quoting *Johnston Envtl. Corp. v. Knight (In re Goodman),* 991
F.2d 613, 618 (9th Cir. 1993)); *see also McMullen v. Sevigny*, 386
F.3d 320, 330 (1st Cir. 2004) ("[A] violation will be found
'willful' if the creditor's conduct was intentional (as
distinguished from inadvertent), and committed with knowledge of
the pendency of the bankruptcy case.").

    Comparing § 362(k) to civil contempt law strengthens the
conclusion that lack of a specific intent to violate the stay is
not a defense to § 362(k) liability.  Section 362(k) is a
parallel remedy to civil contempt, with the added ability to
recover punitive damages in appropriate circumstances.  Just as
good faith is not a defense to civil contempt (*see McComb v.
Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)), good faith is
not a defense to a § 362(k) claim.  *See Univ. Med. Ctr. v.
Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1088 (3d Cir.
1992) (interpreting what was then numbered § 362(h)).  When the
provision was re-numbered § 362(k) in 2005, it added a good faith
defense in § 362(k)(2) with respect to the award of punitive
damages when a creditor believed in good faith that § 362(h)

applied to the debtor, thus making it even clearer that good

faith is not otherwise a defense to a claim under the provision.[7]

Although neither good faith nor a lack of a specific intent

to violate the automatic stay are defenses to a § 362(k) claim,

*In re University Medical Center*, 973 F.2d at 1088, held that when

the law regarding whether an act violates the automatic stay is

sufficiently unsettled to permit a reasonable belief that the

automatic stay did not bar the act at issue, "willfulness" is not

present, and thus damages may not be recovered under the

---

[7]   Section 362(k)(2) provides:

If such violation is based on an action taken by an
entity in the good faith belief that subsection (h)
applies to the debtor, the recovery under paragraph (1)
of this subsection against such entity shall be limited
to actual damages.

Section 362(h) provides an exception to the automatic stay with
respect to personal property in certain circumstances when a
debtor fails timely to file a statement of intention under 11
U.S.C. § 521(a)(2), or fails timely to perform her stated
intention.

statute.[8]  This is similar to the rule that civil contempt

requires that the order or statute violated have been clear and

unambiguous.  *Armstrong v. Exec. Office of the President, Office*

*of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993).  "A party should

not be held in contempt unless a court first gives fair warning

that certain acts are forbidden; any ambiguity in the law should

be resolved in favor of the party charged with contempt."  *U.S.*

*ex rel. I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983)

(applying civil contempt law to a violation of the automatic

stay).

Some decisions characterize *In re University Medical Center*

as creating a "good faith" exception to liability under the

statute.  *See*, *e.g.*, *In re Mu'min*, 374 B.R. 149, 168 (Bankr. E.D.

---

[8]  The court noted that the Secretary's good faith belief
that he was not violating the stay, standing alone, would not be
a valid defense.  *In re Univ. Med. Ctr.*, 973 F.2d at 1088.  It
then stated:

> However, the Secretary also had persuasive legal
> authority which supported his position. . . .  At the
> time the Department withheld payments from UMC, the law
> regarding **the application of the stay to the Department's
> actions was sufficiently uncertain that HHS reasonably
> could have believed its actions to be in accord with the
> stay**.  Both the bankruptcy and district courts recognized
> that "authority existed in this and other jurisdictions
> that could be read to support the lawfulness of [such]
> withholding." [Citation omitted.]  The Secretary could
> find support for his position both in the Medicare
> statute and in case law.

*Id.* (emphasis added).

Pa. 2007). But the defense to a finding of "willfulness"
enunciated in *In re University Medical Center* is not a defense of
good faith, and (as in civil contempt law) is a defense, separate
and distinct from good faith, that when the law is sufficiently
unsettled, willful violation of the statutory command is absent,
and damages are not recoverable, because the offending party has
not acted in violation of a command of which it had fair notice.

*In re Mu'min*, 374 B.R. at 167-70, concluded that the
inclusion of the new limited good faith defense in § 362(k)(2)
after *In re University Medical Center* was decided demonstrates
that Congress legislatively overruled the defense articulated by
*In re University Medical Center* to a finding of "willfulness"
under the predecessor version of § 362(k). The court in *In re
Mu'min* reasoned that § 362(k)(2) makes clear that good faith is
an available defense only when the creditor thought in good faith
that current § 362(h), dealing with a debtor's statement of
intention, applied. It then reasoned that the defense
articulated in *In re University Medical Center*, as a type of good
faith defense, has been legislatively overruled. Again, however,
the defense to a finding of "willfulness" articulated in *In re
University Medical Center* was not one of "good faith" but one of
a lack of willfulness because the unsettled law permitted a
reasonable belief that the stay was not being violated (which is
the same as saying that the unsettled law resulted in there not

being fair notice of a statutory command that the act was
prohibited).  Accordingly, I disagree with the holding of *In re
Mu'min* that the defense articulated in *In re University Medical
Center* was legislatively overruled by the addition of § 362(k)(2)
to the statute.

The defense, however, does not aid the Friedmans.  The law
was not unsettled regarding the effect of a joint petition filed
by individuals who are not spouses.  The result under existing
case law was uniform: Gary Stancil was deemed to have filed a
petition under 11 U.S.C. § 301, thus giving rise to an automatic
stay under 11 U.S.C. § 362(a) (providing in relevant part that "a
petition filed under section 301 . . . operates as a stay").  *See
In re Stancil*, 473 B.R. at 481-82 (discussing the case law that
supports the determination that the filing of an improper joint
petition commences a bankruptcy case as to each entity improperly
joined in the petition).  The Friedmans have not pointed to any
case law that holds that an improper joint petition does not give
rise to the automatic stay.

The Friedmans' reliance on advice of counsel that no stay
arose because Gary Stancil and his mother were not eligible to
file a joint petition might bear on good faith (the issue of
whether they specifically intended to violate the automatic
stay), but good faith is not a defense under § 362(k).  Moreover,
the reliance on the erroneous advice of counsel does not

establish that the law was unsettled as to whether an automatic
stay had arisen.  Thus, even under *In re University Medical
Center*, the Friedmans have not established a defense to finding
willfulness under § 362(k).  The statute, as interpreted in the
case law, was clear and unambiguous that an automatic stay arose
in favor of Gary Stancil.

Therefore, partial summary judgment will be granted in favor
of Gary Stancil and against Greg and Susan Friedman holding that
pursuant to 11 U.S.C. § 362(k)(1), Gary Stancil is entitled to
recover actual damages, including costs and attorneys' fees.  The
amount of those damages was left to be fixed by stipulation, or,
if a stipulation was not reached, to be decided at trial.

Further, partial summary judgment is appropriate in favor of
Gary Stancil decreeing that if he demonstrates at trial that
"appropriate circumstances" exist, the Friedmans' willful
violation of the automatic stay will entitle him to an award of
punitive damages.  But summary judgment is not appropriate to
decree that Gary Stancil is entitled to recover punitive damages.
Section 362(k)(1) provides that when the stay has been willfully
violated, an individual "in appropriate circumstances, may
recover punitive damages."  Stancil's motion for summary judgment
did not address the issue of whether "appropriate circumstances"
exist to warrant an award of punitive damages, and gave no fair
warning to the Friedmans that they were required to advance at

the summary judgment stage their arguments that "appropriate

circumstances" do not exist to warrant an award of punitive

damages.   In any event, even though a trial of this matter would

be a non-jury trial, the court must decide for summary judgment

purposes whether, when the evidence is viewed in the light most

favorable to the Friedmans (as the parties opposing summary

judgment), a finder of fact could reasonably find that

"appropriate circumstances" for awarding punitive damages do not

exist.[9]  Having not argued the issue, Gary Stancil has not shown

that it would be clearly erroneous to decide that "appropriate

circumstances" for an award of punitive damages do not exist.[10]

In any event, the motion for summary judgment did not address the

issue of fixing the amount of punitive damages.

VII

For all of these reasons, 12th Street's motion for summary

judgment will be denied.   Gary Stancil's motion for summary

judgment on his claim for turnover of the Property and the net

---

[9]  *See Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d
732, 738 (D.C. Cir. 1990) ("The district judge has examined
virtually all the evidence it would have before it at a bench
trial. . . . Nevertheless, we must decide this case just as if
there were a jury available, for the law of summary judgment does
not vary with this circumstance.")  The parties have not
stipulated that the summary judgment record can be treated as a
paper trial record for purposes of deciding whether an award of
punitive damages is appropriate.

[10]  On the other hand, the Friedmans have not shown that it
would be clearly erroneous to decide that "appropriate
circumstances" *did* exist.

rents will be granted.[11]  His motion for summary judgment on his claim of willful violation of the automatic stay will be granted as to the defendants Greg and Susan Friedman, and will be denied as to the other defendants.  The issue of whether Gary Stancil is entitled to punitive damages is reserved for trial, along with the issue of the amount of other damages to be awarded to Gary Stancil.  A separate order follows.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.

---

[11]  The amount of rents received, and the amount of expenses that may be appropriately credited against the rents, remains to be determined at trial.