The document below is hereby signed.

Signed: April 18, 2013



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GARY STANCIL, | ) | Case No. 11-00747 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GARY STANCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10006 |
| BRADLEY INVESTMENTS, LLC, *et al.*, | ) | |
| | ) | |
| | ) | **Not for Publication in** |
| Defendants. | ) | **West's Bankruptcy Reporter.** |

MEMORANDUM DECISION AND ORDER
<u>RE GREG FRIEDMAN'S AND SUSAN FRIEDMAN'S MOTION TO ALTER OR AMEND</u>

Greg Friedman and Susan Friedman have filed a motion to alter or amend this court's *Order* (Dkt. No. 106) and *Memorandum Decision Re Cross-Motions for Summary Judgment* (Dkt. No. 105).

I

The Friedmans and Gary Stancil treat the Motion to Alter or Amend as a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Rule 9023 of the Federal

Rules of Bankruptcy Procedure. Rule 9023 requires that a motion to alter or amend a judgment be filed "no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. Because of this deadline, the Friedmans have requested leave to file their motion out of time and Stancil has filed an opposition to this motion for leave.

However, the court has not yet entered a final judgment with respect to the cross-motions for summary judgment. Accordingly, the 14-day deadline in Rule 9023 does not apply.

II

The Friedmans rehash the argument that Gary Stancil filed his petition in bad faith because he had not sought prepetition credit counseling prior to filing his petition, even though he certified on Exhibit D that he had requested the credit counseling services. Mtn. at 3. They request the court to reconsider its determination that the Friedmans'

> action in proceeding with the sale, even though based upon advice of counsel, outweighed Debtor's and his mother's intentionally fraudulent artifice and bad faith action in *successfully misleading* the Court Clerk to accept their fraudulent Chapter 13 petition. Movants submit that Mr. Stancil should not be rewarded for the fraud committed upon the Court.

Mtn. at 4. The court previously addressed this argument and rejected it, finding that "[a]ny bad faith on Gary Stancil's part is outweighed by the mortgagee's knowing violation of the automatic stay." *See Memorandum Decision*, at 14 (Dkt. No. 105).

The Friedmans have not offered any new evidence or pointed to any errors of law or fact.

The Friedmans go on to suggest that the clerk who accepted the petition should have "specifically inquired into the veracity of the sworn certification in Schedule D" and had the clerk done so, "the Debtor's petition would have been rejected [and] . . . there would now be no issue before the Court as to the efficacy of the automatic stay."  Mtn. at 4.

However, contrary to the Freidmans' argument, it is not the clerk's responsibility to question an individual filing for bankruptcy about the veracity of statements on her petition. Moreover, even if the clerk had questioned Stancil, the clerk does not have the authority to refuse to file a petition based on the individual filer's oral statement about Exhibit D.

                                III

The Friedmans next argue that:

> Subsequent to the sale on June 17, 2011, of which Debtor admits that he was aware, neither Debtor, nor anyone acting on his behalf, took any action until February 14, 2012, to put Defendants on notice that Debtor intended to contest the foreclosure sale which had occurred eight months earlier.  Even if Defendants were on notice of Debtor's Chapter 11 filing on October 6, 2011, and there is no reason to believe that Defendants had any such knowledge, the petition was not filed until more than three and a half months after the sale, and, more importantly, not until after the Debtor and his attorneys had permitted the Defendants to incur very significant expense in proceeding to close upon the property.

Mtn. At 5.  Again, 12th Street raised this argument at the

3

hearing and this court found that 12th Street had not shown any unreasonable delay:

> The foreclosure sale occurred on June 17, 2011, the closing occurred on September 29, 2011, Gary Stancil filed his chapter 11 petition on October 6, 2011, and he filed this adversary proceeding on February 14, 2012. There is nothing in the record as to what occurred between June 17, 2011 and September 29, 2011. In any event, Gary Stancil was entitled to assume that the auction sale having been void, the Friedmans would not proceed to a closing of the sale.

*Memorandum Decision*, at 15–16.

The Friedmans have not identified any error with this court's finding that the delay was not unreasonable and have simply repeated the argument 12th Street advanced at the hearing. The Friedmans assert that

> if, as the Court has surmised, Mr. Stancil assumed that the auction sale was void, one would presume that he would have acted as if he owned the property. . . . However, neither Mr. Stancil nor anyone else in his family exercised even the most nominal indicia of real estate ownership.

Mtn. at 6. The court stated only that Stancil was "entitled to assume" that the Friedmans would not proceed to a closing of the sale, and this was a factor in determining that it was not unreasonable for Stancil to have waited until October 6, 2011 to file his chapter 11 petition. Stancil was entitled to assume the closing would not occur even if he did not act as though he owned the Property. Moreover, there is nothing in the record about what happened between the foreclosure sale and the closing.

4

IV

The Friedmans argue that the court erred in not annulling the automatic stay because "it is evident that there was no equity in the property as the proceeds of sale were insufficient to fully satisfy the outstanding mortgage debt encumbering the property and resulted in a deficiency" and because "the property cannot be anticipated to be necessary to - or even to make a negligible contribution to – an effective reorganization of Debtor's financial affairs." Mtn. at 8-9. These arguments do not bring to light any error by the court in determining that the Friedmans' knowledge of the bankruptcy filing prior to the foreclosure sale precluded annulment of the automatic stay.

Finally, the Friedmans question the court's finding that they had notice of the bankruptcy filing:

> While the creditor may have had some indication of the Chapter 13 petition; Debtor has not met its burden of proof as Debtor has submitted no clear evidence to that effect. In fact, in Debtor's deposition, copy attached, he initially declined to identify who might have made a telephone call to apprise the auctioneer of a filing and then expressly denied knowing who, if anyone at all, might have done so.

Mtn. at 8. It does not matter who made the telephone call. The Friedmans' response to the Request for Admission made very clear that, prior to the foreclosure sale, they had knowledge that a bankruptcy petition had been filed. *See* Ex. 4 to Stancil's *Motion for Summary Judgment* (Dkt. No. 86).

Furthermore, the auctioneer at the foreclosure sale,

5

National REO Auctions, Inc., has submitted an affidavit by its President, Douglas K. Goldsten, that shows that Greg Friedman knew of the bankruptcy filing before the foreclosure sale. Goldsten states:

> 4. On June 17, 2011, immediately prior to the time set for the foreclosure, my assistant ran into the auction room and told me that he had just received a phone call from an unidentified person who seemed to be saying that the owner of the subject property had filed a bankruptcy petition.
> 5. I then asked Attorney Greg Friedman to verify that the foreclosure sale could not go forward as a result of the filing of the petition. Mr. Friedman asked that the sale be delayed a few minutes so he could verify that a petition had, in fact, been filed, and I agreed to a brief delay for that purpose. I announced to the bidders in the room that the foreclosure sale would be delay for a few minutes. All the bidders stayed for the sale.
> 6. Mr. Friedman left the auction room and returned a few minutes later and told me that a petition had been filed, but that it was wrongfully filed by a mother and son (Delores Stancil and Gary Stancil) as a joint petition, and that the mother was barred from filing a petition at all. He told me the sale could go forward based on dismissal of the petition. To the best of my recollection, Mr. Friedman also told me he had also consulted with another attorney before reaching this conclusion.

Affidavit of Douglas K. Goldsten (Dkt. No. 128). Moreover, Greg Friedman has not submitted an affidavit explaining his knowledge of the filing of the bankruptcy petition.

V

Greg and Susan Friedman have not shown any error by the court in its *Order* and *Memorandum Decision re Cross-Motions for Summary Judgment*. Accordingly, it is

6

ORDERED that the *Motion by Greg Friedman and Susan Friedman for Leave to File Motion to Alter or Amend Order and Memorandum Decision Beyond Response Period Provided in the Rules* (Dkt. No. 123) is GRANTED.  It is further

ORDERED that the *Motion by Greg Friedman and Susan Friedman to Alter or Amend Order and Memorandum Decision re Cross-Motions for Summary Judgment* (Dkt. No. 120) is DENIED.

[Signed and dated above.]


Copies to: All counsel of record; Office of United States Trustee.